Matthew S. Weiler, CA State Bar No. 236052
mweiler@hpwlaw.com
HERRERA PURDY WEILER LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4700
Facsimile: (855) 969-2050

Andrew M. Purdy, CA State Bar No. 261912
apurdy@hpwlaw.com
HERRERA PURDY WEILER LLP
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900
Facsimile: (855) 969-2050

*Attorneys for Plaintiff Impossible Aerospace Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IMPOSSIBLE AEROSPACE CORPORATION, a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation,<br><br>  Defendant. | Case No. 5:19-cv-07241-SBA<br><br>AMENDED COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Impossible Aerospace Corporation ("Plaintiff" or "Impossible") alleges the following:

## NATURE OF THE ACTION

1. Plaintiff Impossible entered into a contract of insurance with Defendant Evanston Insurance Company ("Defendant" or "Evanston") with a coverage period of July 13, 2018 to July 13, 2019 (the "Policy"). A copy of the Policy is attached here as **Exhibit A**. The instant dispute concerns Defendant's refusal of its duty under the Policy to defend or indemnify Impossible for its defense against the claims alleged in the civil action captioned as *Quanta Laboratories v. Impossible Aerospace Corporation, et al.*, Santa Clara Superior Court Case No. 19CV355337 ("Lawsuit"). A copy of the complaint in the Lawsuit is attached here as **Exhibit B**. Impossible seeks declaratory relief regarding the Policy's insurance coverage pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

2. Plaintiff Impossible is incorporated under the laws of the State of Delaware and has its principal place of business in Santa Clara County, California.

3. Defendant Evanston is incorporated under the laws of the State of Illinois and has its principal place of business in Deerfield, Illinois.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5. An actual justiciable controversy between Impossible and Evanston exists within the meaning of 28 U.S.C. § 2201 regarding whether Evanston has a duty to defend or indemnify Impossible under the Policy with respect to the claims asserted in the Lawsuit, as more particularly described below.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. §§1332(a)(1) and (3) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship among the parties, which are located in different states.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because events giving rise to the Lawsuit occurred in this District. Additionally, Impossible has its headquarters in this District.

**FACTS**

8. Impossible is a manufacturer of commercial drone aircraft. Impossible's drone aircraft use lithium ion battery packs, and are distinguished from their competitors by the relatively long periods of time the drone aircraft can stay aloft.

9. Impossible's drone aircraft have been purchased by public entities for use in firefighting and emergency response. Impossible's drone aircraft are viable alternatives to helicopters, because they provide longer flight time and the similar aerial surveillance performance.

**A.      The Fire at Quanta Laboratories.**

10. In November 2018, Impossible contacted Quanta Laboratories ("Quanta") to perform testing on lithium ion battery packs that power the drone aircraft Impossible was developing.

11. On December 20, 2018, Impossible delivered four lithium ion battery packs to Quanta for testing.

12. The testing to be performed by Quanta was to be done pursuant to standards promulgated by the United Nations ("UN") for lithium ion batteries, specifically Section 38.3 of the UN standards.

13. Quanta purports to be experienced in performing Section 38.3 UN testing on lithium ion batteries and battery packs.

14. This testing was necessary as part of Impossible's development of commercial drone aircraft. Impossible performs some of its own testing on battery packs, but needed certification from Quanta to demonstrate compliance with Section 38.3 UN testing to develop its drone aircraft, so it contracted with Quanta to do so.

15. The battery packs delivered to Quanta were for prototype drone aircraft that were

not yet available for sale.

16. The battery packs delivered to Quanta by Impossible were comprised of commercially available lithium ion batteries manufactured by a third party. Each of these lithium ion batteries is comprised of individual battery cells.

17. Impossible's drones, just like Tesla automobiles and many other cutting-edge rechargeable devices, are designed around the battery packs, which comprise a large part of the mass of the drone aircraft. Indeed, Tesla automobiles use 7,000 or more of the very same type of lithium ion battery that Impossible uses.

18. On the evening of December 25, 2018, a fire occurred in Quanta's laboratories (the "Fire").

19. In January 2019, Quanta demanded that Impossible pay for damages to its property that it contends was caused by the Fire. Quanta claims that the Fire started within the battery packs delivered by Impossible.

20. On January 25, 2019, Quanta, through its agent Markel Service, Incorporated ("Markel"), issued a coverage disclaimer on behalf of Evanston, denying coverage for the Fire. A copy of the January 25 disclaimer is attached here as **Exhibit C**.

21. On September 20, 2019, Quanta filed the Lawsuit against Impossible in Santa Clara County Superior Court alleging that Impossible's negligence caused the Fire. *See* Exhibit B.

22. On October 2, 2019, Quanta, through its agent Markel, issued an additional coverage disclaimer on behalf of Evanston, again denying any duty to indemnify or defend Impossible against Quanta's claims against Impossible in the Lawsuit. A copy of the second disclaimer is attached here as **Exhibit D**.

23. Impossible is unsure how the Fire occurred. It is possible that the Fire may have started due to thermal runaway within a battery cell or cells within a battery manufactured by a third party or sold by another third party reseller. The fire was accidental and not intentionally set.

B. **The Policy and Governing Law.**

24. The Policy is governed by California law.

25. Under the Policy, Evanston agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." *See* Policy § I(1)(a).

26. The fire that occurred at Quanta caused "property damage" for purposes of the Policy, and Quanta's suit seeks damages due to the "property damage" purportedly caused by Impossible.

27. The coverage under the Policy "applies to 'bodily injury' and 'property damage' only if … [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" *See* Policy § I(1)(b)(1).

28. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Policy § V(13).

29. Under the Policy, "coverage territory" is "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada… ." *See* Policy § V(4)(a).

30. As a matter of law, an "occurrence" includes an accident where it is alleged the event was caused by some negligence. *See Baugh Const. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1169 (9th Cir. 1988) ("In essence, a fortuitous event is one that occurs by chance or accident and not by purposeful design. Nowhere is it contended that Baugh purposefully designed and/or constructed a defective building. The pleadings clearly state a claim for negligent design and construction. We find that the negligent construction and negligent design claims fall within the definition of a fortuitous event."); *Ins. Co. of N. Am. v. Sam Harris Constr. Co.*, 22 Cal. 3d 409, 413 (1978) (harm caused by allegedly negligent maintenance is an accident).

31. Impossible denies that its negligence caused the Fire. The damage for the Fire is covered by the Policy because it is an "occurrence" that damaged property in the "coverage area," and Impossible is entitled to have its defense of this action covered because the action filed by Quanta seeks to recover these damages from Impossible.

32. Regardless of whether Impossible was negligent (and Impossible denies that it

1  was), the Fire occurred as a result of Impossible's operations, and more specifically testing that it
2  was performing on battery packs for its drone aircraft with Quanta's assistance.

3     **C.   None of the Exclusions Cited by Defendant Apply Here.**

4     33.   In two disclaimer letters, Defendant has cited four different exclusions in the
5  Policy. *See* Exhibits C & D. None of the exclusions apply, under either the plain terms of the
6  contract or governing law.

7     34.   First, Defendant claims that coverage does not exist under the Policy because the
8  "products/completed operations hazard" ("PCOH") applies. Under Defendant's interpretation of
9  this exclusion, there is no coverage because "[t]he 'property damage' arises out of 'your product'
10 policy [sic] that was not in your physical possession." *See* Exhibit C at 4.

11    35.   The PCOH does not apply because the Fire occurred during testing for a product
12 that was not complete, and had not been sold on the market.

13    36.   Quanta performed for Impossible tasks that were necessary for Impossible's
14 ongoing work in developing its prototype drones. Specifically, Quanta was testing lithium ion
15 battery packs under UN Section 38.3. When the UN testing was to take place in December 2018,
16 the drone aircraft for which the battery packs were being tested were still in development.

17    37.   The PCOH is defined as "'property damage' occurring away from premises you
18 own or rent and arising out of 'your product' or 'your work' except: …  Work that has not yet
19 been completed or abandoned." *See* Policy, Section V, 16(a)(2) (emphasis added).

20    38.   By its plain terms the PCOH exemption does **not** apply to "[w]ork that has not yet
21 been completed or abandoned." *Id.* "Work" is defined under the Policy as "[w]ork or operations
22 performed by you or on your behalf." *Id.* at 22(a).

23    39.   As it is clear Impossible's work was not completed under the plain terms of the
24 policy, the PCOH exemption does not apply. The PCOH exemption does not apply unless is
25 unambiguous that the work as defined by the policy is complete. Even were there any doubt,
26 however, "any ambiguity in the policy must be resolved against" Defendant for purposes of the
27 PCOH exclusion.

28

40. In the alternative, separate and apart from the exception to the exclusion noted above, the PCOH Does not include "'property damage' arising out of … [t]he transportation of property… ." Quanta alleges that the Fire arises out of the transportation of lithium ion batteries. *See* Exhibit C at ¶ 31.

41. Second, Defendant claim that the "Designated Premises Or Project Limitation endorsement" applies because the Fire took place at Quanta's laboratories, and not Impossible's headquarters. *See* Exhibit D at 5.

42. Defendant's arguments for excluding coverage fail. By its plain terms the Policy covers "'property damage' … caused by an 'occurrence' that takes place in the 'coverage territory.'" *See* Policy, Section I, 1(b)(1). "Coverage territory" is defined as the United States. *See* Policy Section V, 4.

43. The endorsement cited by Defendant cannot defeat coverage. By the plain terms of the endorsement, "'property damage' … **arising out of** [t]he ownership, maintenance, or use" of Impossible's headquarters is covered. *See* Policy, DESIGNATED PREMISES OR PROJECT LIMITATION, Section A.1. (emphasis added).

44. Defendant's position that coverage is limited only to events that actually take place at Impossible's headquarters is inconsistent with the clear intention of the policy to cover "advertising injury" "arising out of" "use of" Designated Property under the policy. The Policy must be read to incorporate coverage for occurrences that "arise out of" Impossible's operations.

45. The Fire clearly "arises out of" the use of Designated Property because, regardless of whether Impossible's battery packs caused the fire, Impossible made the decision to send the battery packs to Quanta to test at the Designated Property; the battery packs were packed for shipment at the Designated Property; and the battery packs were shipped from the Designated Property. This is more than enough of a connection to demonstrate coverage under applicable authorities.

46. "Past California cases have established beyond contention that this language of 'arising out of the use,' when utilized in a coverage or insuring clause of an insurance policy, has

broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the" covered property. *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 (1973); *see also Feurzeig v. Ins. Co. of the West*, 59 Cal. App. 4th 1276, 1285 (1997) (coverage where "some of the alleged slanders occurred in connection with Feurzeig's 'use of' those premises to conduct PVCC's business"). The term "arising out of" "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.*, 14 Cal. App. 5th 281, 298 (2017). "As examples of how broadly the 'arising out of the use' provision can stretch, courts have held that it encompassed an injury suffered in Mexico because of a faulty handbook produced in an insured location in California, and also that it encompassed liability for slander when the slanderous statement was made from the listed premises." *United Specialty Ins. Co. v. California Capital Ins. Co.*, 2018 WL 6262805, at *8 (C.D. Cal. Sept. 10, 2018).

47. Third, Defendant argues that "[i]n the event that this matter was covered under the Evanston policy, which it is not, the Total Pollution Exclusion may operate to bar coverage for any 'property damage' which was the result of smoke, vapor, soot or fumes arising out of the fire." *See* Exhibit D at 6. The Total Pollution Exclusion by its plain terms does not apply here because, consistent with both the logic of common language and the reasonable expectations of an insured, the Policy excludes fires such as the one at Quanta's laboratories from this exclusion.

48. The Policy excludes coverage Policy "[a]t or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph **does not apply** to: … 'Bodily injury' or **'property damage' arising out of heat, smoke or fumes from a 'hostile fire**.'" *See id.* at § I(2)(f)(1)(d)(iii) (emphases added).

49. Under the policy, "'[h]ostile fire' means one which becomes uncontrollable or breaks out from where it was intended to be." *See* Policy § V(7). The Fire, regardless of whether

1  Impossible's negligence caused it (and Impossible denies that it did), was obviously a "hostile
2  fire," and thus the Total Pollution Exclusion cannot apply.

3      50.    Fourth, in its first disclaimer letter Defendant claimed that coverage was barred by
4  the "professional services" exclusion. Defendant claims that the Policy "precludes coverage for
5  claims arising out of professional liability, error, omissions, negligent acts and/or acts of any type
6  including any type of professional service… ." *See* Exhibit C at 5. Defendant posits that coverage
7  does not exist under the Policy for any allegations concerning the "design" of a product. *See id.*

8      51.    The "professional services" exclusion excludes coverage for "Professional liability,
9  errors, omissions, negligent acts, malpractice or acts of any type including rendering or failure to
10 render any type of professional service … ." Policy, COMBINATION GENERAL
11 ENDORSEMENT, Section A.2.

12     52.    This exclusion cannot apply because at the time of the Fire Impossible was
13 providing no "professional service" to Quanta or anyone else.

14     53.    The professional services exclusion is inapplicable where the insured is not
15 providing any professional service to the injured party. *See Food Pro Int'l, Inc. v. Farmers Ins.*
16 *Exch.*, 169 Cal. App. 4th 976, 991 (2008).

17     54.    Defendant waived this basis for denying coverage by not including it in the second
18 disclaimer letter, which was issued between the time Quanta served Impossible with its complaint
19 in the Lawsuit and the time Impossible was required to answer the complaint. Estoppel applies
20 because Impossible was required to answer Quanta's complaint based on the coverage position
21 taken by Defendant in the second disclaimer letter. Impossible reasonably relied on the second
22 disclaimer in answering Quanta's allegations.

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT ACT
### (28 U.S.C. §§ 2201, 2202; Fed. R. Civ. P. 57)

26     55.    Impossible incorporates by reference all of the preceding paragraphs.
27     56.    The Fire is an "occurrence" under the Policy. Any damages that Impossible is

required to pay to Quanta arising out of the Fire should be paid by Defendant Evanston under the Policy.

57. The Policy requires Evanston to pay for Impossible's defense in the Lawsuit as Quanta's claims seek, in whole or in part, damages that are covered under the Policy.

58. Impossible has duly submitted claims under the, and has complied with all applicable conditions precedent for coverage.

59. Evanston has either denied, or will deny, Impossible's claims under the Policy. *See* Exhibits C & D.

60. A judiciable controversy therefore exists between Impossible and Evanston.

61. Impossible seeks a declaration that Evanston is required to indemnify it for any losses claimed by Quanta to the extent that Impossible is found liable for such losses in the Lawsuit.

62. Impossible also seeks a declaration that Evanston is required to pay for its defense of the Lawsuit.

*     *     *     *

WHEREFORE, Plaintiff Impossible prays for relief as follows:

    a. That the Court declare Evanston is required to defend Impossible for the Lawsuit;

    b. That the Court declare Evanston is required to pay any losses related to the Fire as a claim under the Policy;

    c. For costs and attorneys' fees; and

    d. For such other and further relief as the Court may deem just and proper.

DATED: December 6, 2019        HERRERA PURDY WEILER LLP

                                  /s/ *Matthew S. Weiler*
                                Matthew S. Weiler

                                *Attorneys for Plaintiff Impossible Aerospace Corporation*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 5:19-cv-07241-SBA -10-
AMENDED COMPLAINT FOR DELARATORY JUDGMENT